UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-21753-CV-WILLIAMS/REID

STARLA MICHELLE, LLC,

       Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

       Defendants.

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S *EX PARTE*
APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER**

       This matter is before the Court on Plaintiff Starla Michelle, LLC's ("Plaintiff" or "SM")
*Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and
Order Restraining Transfer of Assets ("Motion for TRO"), [ECF No. 10], filed under 15 U.S.C. §
1116, 17 U.S.C §§ 502 and 503, Federal Rule of Civil Procedure 65, and The All Writs Act, 28
U.S.C. § 1651(a). This matter was referred to the Undersigned United States Magistrate Judge for
a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). [ECF No. 12].

       The Court has carefully considered the Motion for TRO, the record, and the governing law.
For the reasons stated below, it is **RECOMMENDED** that Plaintiff's Motion for TRO be
**GRANTED**.

**BACKGROUND**

       SM is the owner of all rights in and to the STARLA MICHELLE trademark, U.S. Reg. No.
6,540,016 for art prints; art prints on canvas; printed art reproductions; framed art prints; graphic

1

art prints; graphic fine art prints; printed children's coloring pages in International Class 016, registered October 26, 2021 and shown in Exhibit 1 to the Complaint in this action, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "STARLA MICHELLE Mark"). [ECF No. 10-1 at ¶ 16].

Plaintiff manufactures and sells products under the federally registered trademark STARLA MICHELLE. Plaintiff's products consist of prints, original paintings, licensed artwork that includes, but are not limited to, bedding, pillows, dishtowels, blankets, mugs, plates, rugs, ornaments, clothing, aprons. Plaintiff manufactures and sells unique art prints and illustrations. [*Id.* at ¶¶ 9–10, 18].

Plaintiff's STARLA MICHELLE branded art prints and illustrations consist, represent, and hold the Works from the professional artist Starla Michelle Halfmann, protected by copyright, and registered with the Copyright Office as shown in the table below (the "Copyrighted Works"). True and correct copies of Copyrights Certificates of Registration and the Works they apply to are attached hereto as Composite Exhibit 2 to the Complaint. [ECF No. 1-2]; *see also* [ECF No. 10-1 at ¶¶ 39-41].

| Copyright Title | Reg. No. | Reg. Date |
|---|---|---|
| Rampart | VA 2-057-058 | 03/10/2016 |
| R for Raccoon | VA 2-057-059 | 03/10/2016 |
| C for Cow | VA 2-057-061 | 03/10/2016 |
| Alphabet Kingdom | VA 2-190-295 | 10/14/2019 |
| Firecracker-Peacock | VA 2-337-873 | 02/01/2023 |
| Desert-Series-V | VA 2-337-874 | 02/01/2023 |
| Rooster | VA 2-337-876 | 01/25/2023 |
| Sweet-One | VA 2-337-879 | 01/25/2023 |
| Tale-of-Love | VA 2-337-880 | 01/25/2023 |

| The-Long-Stare | VA 2-337-881 | 01/25/2023 |
|---|---|---|
| Zeus | VA 2-337-882 | 01/25/2023 |
| Desert-Series-VII | VA 2-337-883 | 01/25/2023 |
| Desert-Series-VIII | VA 2-337-884 | 01/25/2023 |
| Happy-Weeping-Willow | VA 2-337-885 | 01/25/2023 |
| M-for-Moose | VA 2-337-886 | 01/25/2023 |
| Magical-Goat | VA 2-337-887 | 01/25/2023 |
| Maxi | VA 2-337-888 | 01/25/2023 |
| No-Longer-the-Hare | VA 2-338-302 | 01/25/2023 |
| Peacock-Blue | VA 2-338-305 | 01/25/2023 |
| Rip-Rap-II | VA 2-338-306 | 01/25/2023 |
| Charmed | VA 2-338-308 | 01/24/2023 |
| Dandelion-Horse | VA 2-338-338 | 01/24/2023 |
| Dancing-Hares | VA 2-338-339 | 01/24/2023 |
| Desert-Series-III | VA 2-338-340 | 01/24/2023 |
| A Copious Season | VAu 1-090-151 | 01/29/2012 |

Genuine art prints and illustrations embodying the Works are widely advertised and promoted by Plaintiff and its authorized distributors under the STARLA MICHELLE Mark. Plaintiff has never granted authorization to any of the Defendants to use, advertise, market or promote unauthorized goods using Plaintiff's copyrighted Works. [ECF No. 10-1 at ¶¶ 42, 43].

Plaintiff alleges that Defendants, through e-commerce stores operating via Internet marketplace platforms under their seller identification names identified on Schedule "A" to the Complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing or using what Plaintiff has determined to be counterfeits, infringements, reproductions and/or colorable imitations of the STARLA MICHELLE Mark and unauthorized reproductions and/or

derivatives of the Copyrighted Works. [*Id.* at ¶¶ 47, 49, 53, 58]; *see also* [ECF No. 10-2 at ¶¶ 11, 19].

Plaintiff contends that Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the STARLA MICHELLE Mark and the Copyrighted Works. [ECF No. 10-1 at ¶¶ 43, 52].

Plaintiff investigated the promotion and sale of counterfeit and infringing versions of Plaintiff's products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit and infringing versions of Plaintiff's merchandise through the Seller IDs. [*Id* at ¶ 45]; [ECF No. 10-2 at ¶ 9].

Plaintiff accessed the e-commerce stores operating under Defendants' Seller IDs. Plaintiff created detailed web page captures and images of the products using the STARLA MICHELLE Mark and unauthorized reproductions and/or derivatives of the Copyrighted Works [ECF No. 10-1 at ¶¶ 47, 49]; [ECF No. 10-2 at ¶¶ 10–11]. Test purchases were placed for certain products — all bearing counterfeits and infringements of the STARLA MICHELLE Mark and the Copyrighted Works at issue in this action — and requested that each product be shipped to addresses in the United States. [ECF No. 10-1 at ¶¶ 61–62].

Plaintiff's representative reviewed and visually inspected the products and determined the products were non-genuine, unauthorized versions of Plaintiff's products. [*Id.* at ¶ 62].

On May 10, 2023, Plaintiff filed its Complaint [ECF No. 1] against Defendants for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, common law trademark infringement and copyright infringement and piracy.

On May 18, 2023, Plaintiff filed its *Ex Parte* Application for Entry of a Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets. [ECF No. 10].

## LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

## DISCUSSION

Based on declarations submitted in support of Plaintiff's Motion, the Court concludes that Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing or using counterfeits, reproductions, or colorable imitations of the products using the STARLA

MICHELLE Mark and the Copyrighted Works, that the products Defendants are selling and promoting for sale are copies of Plaintiff's products that bear or use copies of the STARLA MICHELLE Mark and the Copyrighted Works, and that the infringement of the STARLA MICHELLE Mark and the Copyrighted Works will likely cause Plaintiff to suffer immediate and irreparable injury if a preliminary injunction is not granted.

The following specific facts, as set forth in Plaintiff's Complaint, the Motion for TRO, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted because: (a) Defendants own or control e-commerce stores via Internet marketplace platforms operating under their Seller IDs which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks and copyrights in violation of Plaintiff's rights; (b) there is good cause to believe that more counterfeit and infringing products bearing or using Plaintiff's trademark and copyrights will appear in the marketplace, that consumers are likely to be misled, confused, or disappointed by the quality of these products, and that Plaintiff may suffer loss of sales for its genuine products; and (c) there is good cause to believe that if Plaintiff proceeds to put Defendants on notice of this Application, Defendants can easily and quickly transfer or modify e-commerce store registration data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, thereby thwarting Plaintiff's ability to obtain meaningful relief.

The potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a Temporary Restraining Order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products,

if such relief is not issued. The public interest favors issuance of the Temporary Restraining Order to protect Plaintiff's trademark and copyrights interests and protect the public from being defrauded by the palming off of counterfeit and infringing goods as Plaintiff's genuine goods. Further, under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of Plaintiff's trademark and copyrights. See *Levi Strauss & Co. v. Sunrise Int'l Trading Inc*., 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc*., 970 F.2d 552, 559 (9th Cir. 1992).

Pursuant to 17 U.S.C § 504 (a)(1) and (b), Plaintiff may be entitled to recover, as an equitable remedy, the actual damages suffered as result of the infringement of the Copyrighted Works and any additional profits of the Defendants that are attributable to the infringement and are not taken into account in computing the actual damages or statutory damages pursuant 17 U.S.C § 504(a)(2) and (c).

In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark and copyrights laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that the Motion [ECF No. 10] be **GRANTED**, and a Temporary Restraining Order be entered against all entities included in Plaintiff's Schedule A as follows:

## <u>TEMPORARY RESTRAINING ORDER</u>

1.      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

a.      From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the STARLA MICHELLE Mark, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

b.      From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the STARLA MICHELLE Mark, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the STARLA MICHELLE Mark, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant;

c.      From copying, displaying, distributing, or creating derivative works of Plaintiff's Copyrighted Works; and

2.      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the STARLA MICHELLE Mark, or any confusingly similar trademarks, and the Plaintiff's Copyrighted Works,

on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs. This Order is limited to the Defendants' listings using the STARLA MICHELLE Mark, or any confusingly similar trademarks, and the Plaintiff's Copyrighted Works, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs, and does not apply to the Defendants' entire e-commerce stores.

3.      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the STARLA MICHELLE Mark, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs.

4.      Each Defendant shall not transfer ownership of the Seller IDs during the pendency of this action, or until further order of the Court.

5.      Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this Order.

6.      Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd., Alipay.com Co., Ltd., and Alipay Singapore E-Commerce Private Limited (collectively, "Alipay"), Amazon Payments, Inc. ("Amazon"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), PayPal, Inc. ("PayPal"), eBay, Inc. ("eBay"), Payoneer, Inc. ("Payoneer"), WorldFirst UK Limited ("WorldFirst"), or PingPong Global Solutions Inc. ("PingPong"), Joom, SIA (Latvia) ("Joom"), Stripe, Inc. and/or Stripe Payments Company ("Stripe") and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" to the Complaint, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

7.      Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, AliExpress, Ant Financial Services,

Alipay, Amazon, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, PingPong, Joom, Stripe, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for the Defendants' listings that are alleged to infringe Plaintiff's trademark and copyrights; and (iv) the true identities along with complete contact information including email addresses of all Defendants.

8.      No funds restrained by this Order shall be transferred or surrendered by any Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, PingPong, Joom, Stripe, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

9.      No Defendant whose funds are restrained by this Order may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, PingPong, Joom, Stripe, and their related companies and affiliates restrained by this Order to any other financial institution,

payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

10.     Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

11.     This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by defendants for the purpose of counterfeiting the STARLA MICHELLE Mark and/or unfairly competing with Plaintiff and/or copying the Plaintiff's Copyrighted Works.

12.     This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated by the parties.

## BOND TO BE POSTED

13.     Pursuant to 15 U.S.C. § 1116(d)(5)(D), 17 U.S.C § 503 (a)(3) and Federal Rule of Civil Procedure 65(c), Plaintiff should be required to post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court, and in the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

## PRELIMINARY INJUNCTION

If the District Judge adopts the recommendations made in this Report, a hearing will be set before this Court within fourteen days of the Order, at which time Defendants and/or any other affected person may challenge the appropriateness of this Order and move to dissolve the same

and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. Further, the Court should require the following:

1.      After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve copies of the Complaint, Application, and this Order, on each Defendant by e-mail and/or online contact form or other means of electronic contact provided on the e-commerce stores operating under the Seller IDs, or by providing a copy of this Order by e-mail to the marketplace platform for each of the Seller IDs so that the marketplace platform, in turn, notifies each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.

2.      Plaintiff shall post copies of the Complaint, the Application, this Order, as well as all other documents filed in this action on the website located at www.sriplaw.com/notice and shall provide the address to the website to the Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof.

3.      Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at www.sriplaw.com/notice, or by other means reasonably calculated to give notice which is permitted by the Court.

4.      Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to AliExpress, Alipay, Amazon.com, Inc., Dunhuang Group which operates the DHgate.com and DHpay.com platforms, ContextLogic, and their related companies and affiliates shall, at Plaintiff's

request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective Seller IDs.

5.     Defendants shall have five (5) business days to comply with this Temporary Restraining Order following notice.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), Plaintiff has **THREE** (3) days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge.[1] *See generally Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507 (11th Cir. 1990). Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 2nd day of June, 2023.


_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE


cc:    **United States District Judge Kathleen M. Williams;**

**Counsel of Record**

---

[1] Because this Report and Recommendation stems from an *ex parte* application, the Undersigned is shortening the normal objection period for Plaintiff, and Defendants will not have the opportunity to object to the Undersigned's recommendations because of the *ex parte* nature of a temporary restraining order.